UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| PATRICK D. CARTER | CIVIL ACTION NO. 03-2236 |
| VERSUS | JUDGE HICKS |
| ENSCO INC., ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

This matter is before the Court for trial on the stipulated record. Plaintiff Patrick D. Carter ("Carter") was employed by Defendant ENSCO International, Inc. ("ENSCO"). ENSCO provided Carter with medical insurance coverage through a benefit plan administered by Defendant North American Benefits Network, Inc. ("North American"). [Doc. No. 30 (Joint Stipulation) at No. 5]. The Plan is attached as Exhibit 2 to Record Document No. 31. On November 2, 2002, Carter sustained injuries in an automobile accident. [Id. at Nos. 3 & 4]. As a result of the accident, Carter and/or his health care provider submitted medical charges to North American for payment. [Id. at No. 7] Carter's claim was denied under the "illegal acts" exclusion to coverage. The Administrative Record pertaining to Carter's claim is attached as Exhibit 1 to Record Document No. 31. Carter responded by filing the instant suit. For the reasons which follow, all of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

## FACTUAL BACKGROUND

### A. Discretionary Authority Under the Plan.

ENSCO International, Inc. is the Plan Administrator of the ENSCO International Incorporated Health Plan ("the Plan"). [Doc. No. 31, Ex. A (The Plan) at p. 46]. The Plan provides:

> It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility of benefits, to decide disputes which may arise relative to a Covered Person's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan.

[Id.]. Accordingly, under the clear language of the Plan, ENSCO had maximum legal discretion to interpret the Plan and to determine eligibility for benefits.[1]

### B. The "Illegal Acts" Exclusion.

ENSCO denied Carter's claim under the Plan's "Illegal Acts" exclusion. Specifically, the Plan provides that medical benefits are not provided for:

> **Illegal acts.** Charges for services received as a result of Injury or Sickness caused by or contributed to by engaging in an illegal act or occupation; by committing or attempting to commit any crime, criminal act, assault or other felonious behavior; or by participant in a riot or public disturbance. This exclusion does not apply if the Injury resulted from an act of domestic violence or a medical (including both physical and mental health) condition.

[Doc. No. 31, Ex. A at p. 21].

### C. The Administrative Record.

According to the police report contained within the Administrative Record [Doc. No. 31, Ex. 2], Carter, while alone in his vehicle, was involved in a one vehicle accident on November 2, 2002 at approximately 3:40 A.M. [Id.] The report states, in pertinent part:

> Apparently the driver fell asleep as the veh entered a curve in the roadway. The veh exited the roadway . . . with no evidence of the driver ever applying the brakes. . . . The driver evidently was ejected as he was walking at the scene very muddy. He was disoriented and very confused with head and neck injuries and a broken arm. There was a slight smell of an

---

[1]Plaintiff's contention that the Plan gives no discretion to the administrator to interpret its terms [Doc. No. 33 at p. 8] is without support.

> alcoholic beverage about his person. He was unable to tell me his first name, where he was going, or if anybody else was in the veh. He was not able to make a rational decision pertaining to voluntarily submitting to a blood alcohol test. The veh was completely destroyed by fire.

[Id.][2] The report states that the primary factor for the accident was the condition of the driver, which was described as "apparently asleep/blackout." [Id.] Carter was cited for violations of Louisiana Revised Statutes 32:58 (careless operation) and 32.295.1 (safety belt use). [Id.]

Carter presented at the Sabine Medical Center at 5:00 A.M. The Emergency Department Ongoing Nursing Assessment chart states that Carter was "yelling & cursing on arrival." [Id.] According to the Initial Assessment Form, it was unknown whether Carter had been the driver or the passenger of the car "due to [patient's] limited ability to remember events. Strong smell of ETOH [alcohol]." [Id.] According to the "Emergency Physician Record" concerning Carter's 5:50 A.M. exam, the following clinical impressions were made: "(1) strain - neck; (2) ETOH [alcohol] intoxication; (3) abnormal liver enzymes." [Id.]

Carter was ultimately taken to Byrd Regional Hospital. The consultation report dictated by Dr. Hussein Alammar at 12:53 P.M. states: "Apparently, the patient had some alcohol on board, his birthday was a week ago, but he was offshore, and apparently, he celebrated his birthday last night." [Id.] The "History and Physical" report completed by Dr. J. David Delapp states, in pertinent part: "This is a 34-year-old . . . male, oil worker, who

---

[2]Plaintiff argues that ENSCO should not have relied on the police report because it constitutes hearsay. However, Plaintiff "confuses an eligibility decision with a court proceeding. ERISA does not require [an administrator] to base eligibility decisions on sworn testimony subject to cross examination." Wade v. Hewlett-Packard Development Co. L.P., 2005 WL 3005628 (S.D.Tex. 2005).

last night had been drinking alcohol when he was apparently driving his vehicle and was involved in a high-speed MVA when he flipped the vehicle. . . . Blood alcohol level reported at 05:30 hours this morning was reported to be 135."[3] [Id.] The report also states that Carter's liver enzymes were elevated, but that "[d]ue to the high blood alcohol level," the test would be repeated later in the day. His discharge summary from Dr. Delapp reiterated that Carter "was involved in a roll-over MVA and was intoxicated." [Id.]

On March 24, 2003, an agent or employee of North American sent an email to an agent or employee of ENSCO concerning "an ENSCO member that was involved in a motor vehicle accident." [Id.] The email states that the "description of the accident we have is from the hospital as follows: He was drinking alcohol when he was apparently driving his vehicle and was involved in a high-speed MVA when he flipped the vehicle at 2:00 am." [Id.] The email also states that the "History and Physical" information from the hospital stated that the blood alcohol level as of 5:30 am was 135, which was over the legal limit. [Id.] Accordingly, the email asked whether the medical expenses incurred should be denied under the "illegal acts" exclusion. ENSCO responded that the claim should be denied. [Id.] Accordingly, North American sent correspondence to Carter, through his attorney, stating that his claim was being denied because his medical claims were not covered expenses: "In accordance with documentation provided within the Police Report

---

[3]The 135 indicates 135 mg/dl, which is equivalent to .135% by weight base on grams of alcohol per one hundred cubic centimeters of blood, which is well over the legal limit. The absence of the actual test results from the Administrative Record is irrelevant. The test of Carter's blood alcohol was a medical test (as opposed to a forensic test) taken for purposes of medical diagnosis and treatment. ENSCO was entitled to rely upon Dr. Delapp's report of those results. Further, even if the blood alcohol level was actually 129 (as shown on one report), it would still exceed the legal limit.

and the Emergency Room Notes from the hospital, Mr. Carter was involved in an illegal act." [Id.]

On December 5, 2003, Carter filed the instant suit in state court. It was subsequently removed to this Court, which stayed the matter pending Carter's exhaustion of administrative remedies. Accordingly, on April 13, 2004, Carter appealed the denial of benefits to ENSCO. [Doc. 32-2, Ex. 1]. On Jule 11, 2004, with no deference to the initial determination, ENSCO upheld the denial of benefits. [Doc. 32-2, Ex.2]. The stay on the present litigation was lifted on June 18, 2004. The matter has been fully briefed and is ripe for adjudication.

## LAW AND ANALYSIS

### A. Standard of Review Under ERISA.

It is well settled that the standard of review in an ERISA case is governed by the language of the plan at issue. If that plan grants the administrator discretionary authority to determine eligibility for benefits or construe the terms of the plan, then the court must use an "abuse of discretion" standard of review. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S. Ct. 948; Duhon v. Texaco Inc., 15 F.3d 1302 (5th Cir. 1994); Wildbur v. ARCO Chemical Co., 974 F.2d 631 (5th Cir. 1992). According to the Plan at issue, the Plan Administrator had the maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan and to decide questions of Plan interpretation and those of fact relating to the Plan. [Doc. No. 31, Ex. A (The Plan) at p. 46]. Accordingly, the "abuse of discretion" standard applies.

In applying the abuse of discretion standard, the Court should analyze whether the administrator acted arbitrarily or capriciously. See Meditrust Financial Services, Corp. v. Sterling Chemicals, Inc., 168 F.3d 211, 214 (5th Cir. 1999)(*quoting* Sweatman v.

Commercial Union Ins., Co., 39 F.3d 594, 601 (5th Cir. 1994)). When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, an administrator's decision should be affirmed if it is supported by substantial evidence. See Meditrust Financial Services, Corp., 168 F.3d at 215.

A decision is arbitrary only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." Id. (*quoting* Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d 822, 828-29 (5th Cir. 1994)). The Court's review of the administrator's decision "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness–even if on the low end." Vega v. National Life Ins. Services, Inc., 188 F.3d 287, 297 (5th Cir. 1999).

Courts apply a sliding scale to the abuse of discretion standard where it is determined that the administrator acted under a conflict of interest. Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337, 343 (5th Cir. 2002). "'The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be.' When a minimal basis for a conflict is established, we review the decision with 'only a *modicum less* deference than we would otherwise.'" Id. (*quoting* Vega, 188 F.3d at 299)(emphasis in original).

### B. ENSCO's Factual Determination that Carter was Operating a Vehicle While Under the Influence.

In evaluating whether a plan administrator abused its discretion in making a factual determination, a district court may only consider the evidence that was available to the administrator at the time of his decision. See Southern Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98, 102 (5t Cir. 1993). See also Meditrust Financial Services, Corp. v.

Sterling Chemicals, Inc., 168 F.3d 211, 214 (5th Cir. 1999). Evidence which was not a part of the administrative record cannot be admitted in the district court to resolve a factual issue which the administrator relied upon when resolving the merits of the claim. See Vega v. National Life Ins. Serv., Inc., 188 F.3d 287, 289 (5th Cir. 1999). As the Fifth Circuit clarified:

> As a result, a district court must inquire only whether the "record adequately supports the administrator's decision."; from that inquiry it can conclude that the administrator abused its discretion if the administrator denied the claim "[w]ithout some concrete evidence in the administrative record."

Gooden v. Provident Life & Acc. Ins. Co., 250 F.3d, 329, 333 (5th Cir. 2001)(*quoting* Vega, 188 F.3d at 298, 302).

To the extent that ENSCO's determination that Carter was operating a vehicle under the influence of alcohol at the time of the accident is a *factual* determination, it is amply supported by sufficient medical evidence contained in the administrative record. Specifically, the "History and Physical" by Dr. Delapp, the record of consultation with Dr. Alammar, the Emergency Physician Record from Sabine Medical Center, the Initial Assessment Form, the Discharge Summary, and the police report. [Doc. No. 31, Ex. B; Doc. No. 32-2, Ex. 2]. All of these documents indicate that Carter was driving while intoxicated. Accordingly, the Court finds that there was a definite "rational connection" between the available medical information and investigation for ENSCO to determine that Carter was driving while intoxicated. ENSCO's determination was reasonable under the circumstances.[4]

---

[4] Plaintiff's argument that the Plan Administrator must have evidence sufficient to support a criminal conviction is without merit.

**C. ENSCO's Interpretation of the Plan's "Illegal Activity" Exclusion to Encompass Operating a Vehicle Under the Influence.**

The Plan gives ENSCO broad, express authority to determine questions of eligibility for benefits. As a result, the Court is bound to review ENSCO's decision under an abuse of discretion standard. James v. Louisiana Laborers Health and Welfare Fund, 29 F.3d 1029 (5th Cir. 1994)(*citing* Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989)).[5] In situations where the administrator is acting under a possible or actual conflict of interest, that factor must also be weighed in determining whether there is an abuse of discretion. Id. at 115, 109 S.Ct. at 956-57. Such a review involves two steps. First, the Court must determine whether ENSCO's decision was legally correct. Kennedy v. Electricians Pension Plan, IBEW No. 995, 954 F.2d 1116, 1124 (5th Cir.1992); Batchelor v. International Brotherhood of Electrical Workers Local 861, 877 F.2d 441, 442-43 (5th Cir.1989). If the answer to this question is no, then the court must determine whether, even though legally incorrect, the decision amounts to an abuse of discretion. Kennedy, 954 F.2d at 1124. For the following reasons, the Court finds ENSCO's conclusion to be legally correct, and therefore need not address any abuse of discretion.

In determining the legally correct interpretation of the Plan, the Court should consider: (1) whether the interpretation is consistent with a fair reading of the plan; (2)

---

[5]In this section, the Court borrows heavily from the language of the Fifth Circuit's opinion in James v. Louisiana Laborers Health and Welfare Fund, 29 F.3d 1029 (5th Cir. 1994). In James, an insured was denied benefits under the "Illegal Act" exclusion for injuries sustained while committing "battery with a dangerous weapon" (a shoe) even though he was neither arrested, charged nor convicted as a result of the incident. The Fifth Circuit upheld the denial of benefits, finding that the criminal justice system's failure to prosecute "by no means constitutes an affirmative finding that the individual is absolved of any crime." Id. at 1034.

whether there has been uniformity in construction of the plan; and (3) whether the interpretation results in any unanticipated costs to the plan. Kennedy, 954 F.2d at 1121. Since the parties have not submitted evidence of other occasions where ENSCO denied benefits based on the "Illegal Acts" exclusion or evidence concerning unanticipated costs, the Court will devote its attention to the issue of whether ENSCO's reading of the Plan was fair and reasonable.

Under Louisiana law, it is an illegal act to operate a motor vehicle when the operator is (a) under the influence of alcoholic beverages or (b) has a blood concentration of .08 percent or more. La. R.S. 14:98. ENSCO found, based on the information available in the Administrative Record, that Carter was operating a vehicle while intoxicated, and that such operation constituted an "Illegal Activity" within the meaning of the Plan. The Court finds that ENSCO's finding comports with a fair and reasonable interpretation of the Plan in light of Louisiana law. The fact that Carter was not prosecuted for operating a vehicle while intoxicated does not preclude an administrative finding that he was indeed engaged in an illegal act as that term is defined by the Plan. See, e.g., James v. Louisiana Laborers Health and Welfare Fund, 29 F.3d 1029 (5th Cir. 1994). Since the Court finds that ENSCO had ample reason to conclude that ENSCO was engaged in an illegal activity by operating a vehicle under the influence of alcohol, the Court need not decide whether the citations for careless operation and safety belt use would qualify as an "Illegal Activity" absent the aggravating circumstance of Carter's intoxification.[6]

---

[6]However, the Court notes that other circuits have found that similar traffic violations are indeed "illegal activities" within the meaning of the exclusion. See, e.g., Celardo v. Gny Automobile Dealers Health & Welfare Trust, 318 F.3d 142 (2nd Cir. 2003).

**CONCLUSION**

Applying the standards discussed above to the Administrative Record, the Court concludes that ENSCO did not abuse its discretion in denying Carter's claim. ENSCO's determination is consistent with a correct interpretation of the Plan and a reasonable determination of the facts based on the administrative record. Accordingly, all claims made by Patrick D. Carter against ENSCO International, Inc. and North American Benefits Network, Inc. are **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 13th day of July, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE